**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**KENNETH E. HEBERT**                                   **CIVIL ACTION NO.**

**VERSUS**                                              **22-226-SDD-EWD**

**COMMISSIONER OF SOCIAL SECURITY**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 10, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**KENNETH E. HEBERT**                                                   **CIVIL ACTION NO.**

**VERSUS**                                                                      **22-226-SDD-EWD**

**COMMISSIONER OF SOCIAL SECURITY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Kenneth E. Hebert ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for supplemental security income ("SSI").[1] Plaintiff has filed a counseled Memorandum in Support of Appeal[2] and the Commissioner has filed an Opposition Memorandum.[3]

Based on the applicable standard of review under 42 U.S.C. § 405(g), it is unclear whether the administrative law judge ("ALJ") applied the correct legal standard at step 2 of the sequential evaluation process, and that error was not harmless. Accordingly, it is recommended that the Commissioner's decision be **VACATED,** and that this matter be **REMANDED** for a determination of the severity of Plaintiff's medically determinable impairments under the correct legal standard and for further administrative proceedings consistent with this Report and Recommendation.

**I.    PROCEDURAL HISTORY**

On July 5, 2019, Plaintiff filed an application for SSI[4] alleging disability beginning January

---

[1] *See* R. Doc. 11-6, pp. 24-31 (application for SSI) and R. Doc. 11-3, pp. 2-7 (Notice of Appeals Council Action).
[2] R. Doc. 12 and *see* R. Doc. 16 (Plaintiff's reply brief).
[3] R. Doc. 15.
[4] On August 19, 2019, Plaintiff filed an application for disability insurance benefits but later withdrew it.  R. Doc. 11-6, pp. 5-23.

1, 2017.[5] The claim was initially denied on January 2, 2020,[6] and then denied on reconsideration on August 20, 2020.[7] Thereafter, Plaintiff timely requested a hearing before an ALJ.[8] A hearing was held by telephone on July 23, 2021, at which Plaintiff, who was represented by counsel, testified.[9] Vocational Expert Christi Lamandre also testified.[10] On October 5, 2021, the ALJ issued a notice of unfavorable decision.[11] Plaintiff timely requested review by the Appeals Council.[12] Plaintiff was represented by counsel in his request for review.[13] On February 15, 2022, the Appeals Council denied Plaintiff's request.[14]

On April 6, 2022, Plaintiff timely filed his Complaint in this Court.[15] Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[16]

---

[5] R. Doc. 11-6, p. 24. While Plaintiff testified and reported several times that he was working/had worked as a carpenter from 2007 until 2019, he had no reported earnings after 2003. Plaintiff also testified that he was paid in cash. *See* R. Doc. 11-3, pp. 34-36; R. Doc. 11-6, pp. 26-27, 32-34 (earnings history); R. Doc. 11-7, pp. 13-14, 22, 24-25, 39.
[6] R. Doc. 11-5, pp. 6-9, and *see* the Disability Determination and Transmittal ("DDT") and the Disability Determination Explanation ("DDE"), dated January 2, 2020 at R. Doc. 11-4, pp. 2-12.
[7] R. Doc. 11-5, pp. 11-13 and *see* the DDT and DDE, dated August 17, 2020 at R. Doc. 11-4 pp. 13-26. Plaintiff timely sought reconsideration. R. Doc. 11-5, p. 10.
[8] R. Doc. 11-5, pp. 15-17.
[9] R. Doc. 11-5, p. 64 (fee agreement and appointment of representatives); R. Doc. 11-7, p. 81 (request to appear by telephone); R. Doc. 11-5, p. 57 and R. Doc. 11-7, pp. 82-84 (representative brief and request for on-the-record decision); R. Doc. 11-5, p. 33 (notice of hearing); R. Doc. 11-3, pp. 27-53 (transcript of hearing).
[10] R. Doc. 11-7, pp. 85-86 (resume).
[11] R. Doc. 11-3, pp. 11-25. The administrative record's table of contents prepared by the Commissioner incorrectly lists the date of the ALJ's decision as September 30, 2021. R. Doc. 11-2, p. 1.
[12] R. Doc. 11-5, pp. 65-67 and *see* R. Doc. 11-3, pp. 9-10.
[13] R. Doc. 11-5, p. 65 and *see* R. Doc. 11-3, p. 8 (supplemental appeal brief).
[14] R. Doc. 11-3, pp. 2-4.
[15] R. Doc. 1.
[16] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

2

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[17] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[18] "[F]indings of fact by the Secretary are conclusive if supported by substantial evidence. Of course, no similar presumption of validity attaches to the Secretary's conclusions of law, including determinations of the proper standards to be applied in reviewing claims and the proper allocation of the burden of proof."[19]

## III. PLAINTIFF'S ASSIGNMENTS OF ERROR

Plaintiff argues the following two assignments of error: (1) the ALJ failed to apply the correct standard at step two when determining that Plaintiff does not have a severe impairment, and (2) the ALJ erred in his determination that the "Worn Out Worker Rule" does not apply to Plaintiff, which would have resulted in a finding of disability.[20]

## IV. LAW AND ANALYSIS

To show that he is disabled, Plaintiff must demonstrate that he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

---

[17] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[18] *Bruno, M v. U.S. Commissioner, Social Security Administration,* No. 19-886, 2020 WL 5269741, at *3 (W.D. La. Aug. 6, 2020), report and recommendation adopted sub nom., *Bruno v. Commissioner, Social Security Administration*, No. 19-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981)).
[19] *Western*, 633 F.3d at 1206, citing *Knox v. Finch*, 427 F.2d 919, 920 (5th Cir. 1970).
[20] R. Doc. 12, pp. 1, 7, 13.

3

for a continuous period of not less than 12 months."[21] In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis.[22] At step 2 of the sequential analysis, which is the only step at issue in this case, the ALJ must determine if a plaintiff has a severe medically determinable impairment(s).[23] Under the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."[24] SSR 85-28 provides examples of basic work activities: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.[25] Plaintiff bears the burden to prove a severe impairment at step 2.[26]

The step two requirement that the claimant have a severe impairment is generally considered to be "a *de minimis* screening device to dispose of groundless claims."[27] The Fifth Circuit held in *Stone v. Heckler* that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to

---

[21] *Ricks v. Comm'r of Soc. Sec.,* No. 18-1097, 2020 WL 488285, at *8 (M.D. La. Jan. 30, 2020), citing 42 U.S.C. § 423(d)(1)(A). The Regulations go on to state that "[u]nless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." *Id.,* citing 20 C.F.R. § 404.1509.
[22] *Herrera v. Comm'r of Soc. Sec.,* 406 Fed.Appx. 899, 902 (5th Cir. 2010).
[23] *Richardson v. Saul,* No. 21-676, 2022 WL 3337772, at *5 (N.D. Tex. June 16, 2022), report and recommendation adopted sub nom. *Richardson v. Comm'r of Soc. Sec. Admin.,* No. 21-676, 2022 WL 2527044 (N.D. Tex. July 7, 2022), citing 20 C.F.R. § 404.1520(a)(4)(ii)(c) and *Herrera,* 406 Fed.Appx. at 903. The ALJ stated that he was required to follow a two-step process in which he first had to determine whether there was an underlying medically determinable physical or mental impairment that could produce Plaintiff's pain or other symptoms. If such an impairment was shown, then the intensity, persistence, and limiting effects of Plaintiff's symptoms had to be evaluated to determine the extent to which they limit Plaintiff's work-related activities. R. Doc. 11-3, p. 18. *See* 20 C.F.R. § 416.929 (symptoms such as pain are considered throughout the sequential evaluation process).
[24] *Richardson,* 2022 WL 3337772, at *5, citing 20 C.F.R. § 404.1520(c).
[25] <u>Titles II and XVI: Medical Impairments That Are Not Severe,</u> SSR 85-28 (S.S.A. 1985), 1985 WL 56856, *3.
[26] *See, e.g., Masterson v. Barnhart,* 309 F.3d 267, 271 (5th Cir. 2002); *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); and *Johnson v. Astrue,* No. 08-3658, 2010 WL 148411, at *16 (S.D. Tex. Jan. 11, 2010).
[27] *Johnson,* 2010 WL 148411, at *16 (citations omitted).

4

interfere with the individual's ability to work, irrespective of age, education or work experience."[28] The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity."[29] Even though the burden at step two lies with the plaintiff, the plaintiff need only make a minimal showing to move to the next step in the five step sequential process. With respect to a minimal showing, the mere presence of a condition or ailment is not sufficient.[30]

### A.  The ALJ Found That Plaintiff Had No Severe Impairments at step 2

At step 2, the ALJ found that Plaintiff had medically determinable impairments of essential hypertension, obesity, lumbar degenerative disc disease with back pain and shortness of breath; however, he found that Plaintiff did not have a severe impairment or combination of impairments.[31]

#### 1.  Lumbar degenerative disc disease with back pain

The ALJ noted Plaintiff's complaints of pain in his back and lower extremities, being woken up at night due to back aches, and use of crutches at times due to his leg pain.[32] The ALJ also noted that diagnostic imaging of Plaintiff's lumbar spine with North Oaks Radiology revealed degenerative disc disease and evidence of spondylolisthesis.[33] The ALJ noted that Plaintiff's lumbar spinal area was found tender to palpation, and that on at least one occasion, Plaintiff's straight leg raise testing was positive on the right [sic, left] side and Plaintiff had reduced range of

---

[28] *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985), quoting *Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir. 1984).
[29] *Johnson*, 2010 WL 148411, at *16, citing *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir.2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); 20 C.F.R. § 404.1523.
[30] *Johnson,* 2010 WL 148411, at *16, citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).
[31] R. Doc. 11-3, p. 17.
[32] R. Doc. 11-3, p. 18, citing R. Doc. 11-3, pp. 38, 44-45, 47-49 (Plaintiff's hearing testimony re: back pain), R. Doc. 11-7, pp. 31 (Plaintiff reports waking up with headaches and back aches in the night), 55 (use of crutches); R. Doc. 11-8, pp. 59 (Plaintiff reports pain and difficulty in lumbar vertebrae), 71 (North Oaks Radiology x-ray results of Plaintiff's lumbar spine ("3/10/20 spinal x-ray")) .
[33] R. Doc. 11-3, p. 18, citing R. Doc. 11-8, p. 71 (3/10/20 spinal x-ray).

motion.[34] Despite this medical evidence, the ALJ found that Plaintiff's low back pain was not severe because "there was no evidence of any lumbar nerve root or spinal cord compromise."[35] The ALJ noted that, although Plaintiff reported using crutches, he did not use any assistive device at his consultative exam.[36] Further, although Dr. Boudreaux found during his July 25, 202 consultative examination that Plaintiff had a "markedly" antalgic gait, he also found that Plaintiff ambulated without difficulty.[37] Dr. Boudreaux observed that Plaintiff was able to get out of a chair without difficulty and was able to perform heel and toe walking.[38] Dr. Boudreaux also observed that Plaintiff's straight leg raise testing was negative, Plaintiff had normal musculoskeletal strength, and Plaintiff's spinal and joint range of motion testing was normal.[39] RKM Primary Care also found that Plaintiff had a normal gait without any reported use of an assistive device.[40] The ALJ noted that there was "no evidence of any injection therapy or recommended surgical intervention" for Plaintiff.[41]

2. Hypertension

The ALJ acknowledged that Plaintiff has been diagnosed with hypertension and his blood pressure readings have been high at times, with systolic pressure ranging from 143 to 155 and

---

[34] R. Doc. 11-3, p. 18, citing R. Doc. 11-8, p. 61 and *see id.*, p. 59 (7/25/20 consultative exam with Dr. Tyler Boudreaux at Med Plus Disability Determinations, which was requested by the Commissioner (*see* referral at *id*., p. 67) ("7/25/20 Med Plus C.E.") noting pain and difficulty in lumbar vertebrae, spasm of the paraspinous muscles and bilateral lumbar facet joint area tenderness); *Id*., p. 112 (3/10/20 RKM Primary Care visit finding abnormal spine; positive straight leg raise on the left, negative on the right; tender left spine with palpation and full range of motion of the back; pain in the bilateral heels with palpation and extension of the distal aspect of the foot); and *id*., p. 117 (7/13/20 RKM Primary Care visit noting abnormal spine, pain with palpation of left spine, and limited range of motion with bending forward and backwards).
[35] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 71 (3/10/20 spinal x-ray).
[36] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 61 (7/25/20 Med Plus C.E.) and *see* R. Doc. 11-3, pp. 44-45 (Plaintiff's hearing testimony).
[37] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 61 (7/25/20 Med Plus C.E.).
[38] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 61 (7/25/20 Med Plus C.E.).
[39] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, pp. 62-63 (7/25/20 Med Plus C.E.).
[40] R. Doc. 11-3, p. 19, R. Doc. 11-8, p. 60 (7/25/20 Med Plus C.E.); R. Doc. 11-8, pp. 6, 20, 97, 112, 140 (8/23/19, 9/17/18, 7/25/19, 3/10/20, 1/27/21 RKM Primary Care visits).
[41] R. Doc. 11-3, p. 19.

diastolic pressure ranging from 86 to 94.[42] However, the ALJ also noted that, despite Plaintiff's hypertension and reported shortness of breath, an echocardiogram taken by the Louisiana Heart Center revealed that Plaintiff had "a normal left ventricle ejection fraction of fifty-five to sixty percent."[43] Plaintiff also had normal left atrial pressure and diastolic function, mild dilation of the left atrium chamber and only trace mitral and tricuspid regurgitation.[44] The ALJ found that Plaintiff was negative for pertinent signs and symptoms of hypertension, such as blurred vision, malaise/fatigue, chest pain, orthopnea, peripheral edema, and sweat.[45] The ALJ further found that there was "no evidence of any end stage organ disease, retinopathy, heart failure, coronary artery disease, myocardial infarction, cerebrovascular insult, or hospitalization for hypertensive crisis."[46]

3. <u>Shortness of Breath</u>

The ALJ noted that Plaintiff complained of difficulty breathing, including becoming short of breath with activity; being unable to swim or walk more than a block; and using inhalers.[47] The ALJ also noted that Plaintiff alleged limitations to lifting, standing, squatting, walking, kneeling, stair climbing, seeing, remembering, and completing tasks.[48] However, the ALJ pointed out that Plaintiff's spirometry testing was normal, including "an FVC score of 3.95 and an FEV1 score of 3.15."[49] Plaintiff's records also reflected normal respiratory exams, including clear lungs without

---

[42] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, pp. 61, 63 (7/25/20 Med Plus C.E.); *Id*., pp. 3, 41 (8/23/19, 11/21/19 RKM Primary Care visits).
[43] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 37 (11/15/19 echocardiogram report interpreted by Dr. Richard Colon of the Louisiana Heart Center) which was requested by the Commissioner (*see* referral at *id.*, pp. 25, 39).
[44] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 37.
[45] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, pp. 3, 5, 20, 87 (8/23/19, 9/17/18 RKM Primary Care visits); *id.*, p. 59 (7/25/20 Med Plus C.E.).
[46] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, p. 63 (7/25/20 Med Plus C.E.).
[47] R. Doc. 11-3, p. 19, citing R. Doc. 11-7, p. 49 (function report); R. Doc. 11-8, pp. 7, 41 (7/25/19 and 11/21/19 RKM Primary Care visits); *id.,* p. 63 (7/25/20 Med Plus C.E.) and *see* testimony at R. Doc. 11-3, pp. 36-37, 41-43.
[48] R. Doc. 11-3, p. 18, citing R. Doc. 11-7, pp. 35, 54.
[49] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, pp. 94 (7/25/19 RKM Primary Care visit) and 27 (11/13/19 pulmonary function study at the Baton Rouge Clinic, requested by the Commissioner (*see* referral at *id*., pp. 25, 36)). Plaintiff reported to his primary care provider that he had not visited a pulmonologist. R. Doc. 11-8, p. 7 (also at *id*., p. 94).

7

evidence of any wheezing or rhonchi.[50] The ALJ also considered Plaintiff's reports of daily activities, noting that Plaintiff had no reported difficulties performing personal care tasks, performing household chores, cooking, and shopping for groceries.[51]

    4. <u>Obesity</u>

The ALJ merely noted that the record showed evidence of obesity: "During the period at issue, the claimant was five feet eight inches tall and weighed about 230 to 234 pounds (5F/2, 8F/2). This equates to a Body Mass Index (BMI) of 35.0 to 35.6 [sic, 36.6, based on the cited records]."[52]

While the State Agency consultants determined that Plaintiff's obesity and hypertension were severe impairments but that Plaintiff had a medium residual functional capacity ("RFC") with exertional limitations, the ALJ solely addressed their RFC opinions and found them unpersuasive and inconsistent with his analysis of the medical and other evidence referenced.[53] However, the ALJ found the opinion of the consultative examiner persuasive, which was that Plaintiff had no limitations in standing, sitting, walking, bending, stooping, reaching, handling, lifting, carrying, seeing, hearing, remembering, or understanding.[54]

---

[50] R. Doc. 11-3, p. 19, citing R. Doc. 11-8, pp. 6 (also, p. 5), 20, 87 (9/17/18, 8/23/19 RKM Primary Care visits); *id*., p. 61 (7/25/20 Med Plus C.E.).
[51] R. Doc. 11-3, p. 19, citing R. Doc. 11-7, pp. 31, 33 (9/19/19 function report). While the ALJ noted that Plaintiff's function report stated that Plaintiff mowed the lawn (R. Doc. 11-3, p. 19, citing R. Doc. 11-7, p. 32), Plaintiff testified at the hearing that he is unable to mow the lawn anymore. R. Doc. 11-3, p. 48.
[52] R. Doc. 11-3, p. 18, citing R. Doc. 11-8, p. 41 (11/19/19 RKM Primary Care visit that reflects weight of 234 pounds and height of 67 inches for a BMI of 36.65, not 35.5), and *id*., p. 60 (7/25/20 Med Plus C.E. that reflects weight of 230 pounds and height of 68 inches for a BMI of 35). Plaintiff did not allege obesity as one of his impairments in his application. R. Doc. 11-7, p. 24.
[53] R. Doc. 11-3, p. 20, citing the DDEs at R. Doc. 11-4, pp. 9-12 (initial determination) and pp. 22-26 (reconsideration). On reconsideration, the State Agency consultant assigned a medium RFC and exertional limitations of occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk and sit for a total of 6 hours in a normal workday; and unlimited pushing/pulling except as shown for lift/carry. R. Doc. 11-4, p. 23.
[54] R. Doc. 11-3, p. 20, citing R. Doc. 11-8, p. 63 (7/25/20 Med Plus C.E.). The ALJ stated that he did not evaluate the persuasiveness of Plaintiff's 11/13/19 pulmonary function study or 11/15/19 echocardiogram because they contained only testing results, not function by function analyses. R. Doc. 11-3, p. 21, citing R. Doc. 11-8, pp. 27-35, 37-38.

Thus, the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities.[55] As such, the ALJ found that Plaintiff's medically determinable impairments of essential hypertension, lumbar degenerative disc disease with back pain, shortness of breath, and obesity were not severe impairments and ended the analysis at step 2, finding that Plaintiff was not disabled.[56]

### B. The ALJ Referenced a Non-Severity Standard That Complies with *Stone v. Heckler*

In *Stone v. Heckler*, the Fifth Circuit held that "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[57] Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity."[58] In this Circuit, "ALJs are bound not just to use this standard but also to cite it (or to an equivalent authority) in their written decisions; we presume that an ALJ applied the wrong severity standard if it does not."[59]

Plaintiff challenges the ALJ's recitation of the applicable standard at step 2, which is taken directly from SSR 85-28:[60]

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. **An impairment or combination of impairments is "not severe"**

---

[55] R. Doc. 11-3, p. 21.
[56] R. Doc. 11-3, pp. 18-21. Plaintiff alleged disability based on hypertension, breathing problems, high cholesterol and low sugar. R. Doc. 11-7, p. 24. Plaintiff does not challenge the ALJ's determination of his medically determinable impairments.
[57] *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985).
[58] *Scroggins v. Astrue,* 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009), citing *Stone,* 752 F.2d at 1104.
[59] *Keel v. Saul,* 986 F.3d 551, 555 (5th Cir. 2021).
[60] SSR 85-28 provides, in pertinent part: "An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." 1985 WL 56856, *3.

9

> **when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work** (20 CFR 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p).[61]

Plaintiff argues that the ALJ's non-severity standard does not comport with *Stone,* as it refers to a more stringent standard in the bolded language above.[62] The Commissioner counters that the ALJ recited the correct standard.[63] In *Keel v. Saul*, the Fifth Circuit expressly held that the non-severity standard in SSR 85-28 is consistent with the *Stone* standard despite the different wording.[64] "Remand is only appropriate 'where there is no indication that the ALJ applied the correct standard.'"[65] Thus, the ALJ's reference to SSR 85-28, as opposed to *Stone*, does not alone result in error. However, the ALJ's decision is subject to reversal and remand on other grounds, *i.e.*, because it is not clear that he applied the appropriate legal standard in his step 2 findings.

### C.  It Is Unclear Whether the ALJ Applied the Correct Legal Standard at step 2

Plaintiff argues that his impairments meet the *de minimis* standard of having at least some impact on his work capacity and that the ALJ applied a standard more stringent than *Stone* to conclude otherwise; in particular because the ALJ compared Plaintiff's impairments to listing level and other heightened criteria throughout his severity analysis.[66] The Commissioner does not address the propriety of the ALJ's multiple references to listing-level or other heightened criteria

---

[61] R. Doc. 12, p. 8; R. Doc. 16, pp. 1-2; R. Doc. 11-3, p. 15.
[62] R. Doc. 12, pp. 8-9, 12-13.
[63] R. Doc. 15, pp. 3-4.
[64] *Keel*, 986 F.3d at 556 ("Although we reaffirmed the traditional *Stone* standard in *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018), and *Garcia*, 880 F.3d at 705, we did not rule on whether SSR 85-28 comports with it. We now hold that it does."). *Keel's* holding that the non-severity standard in SSR 85-28 comports with *Stone* appears to have resolved the split among the district courts over whether ALJs must strictly recite the standard from *Stone* or whether they are permitted to cite SSR 85-28. *Keel*, 986 F.3d at 556, citing SSR 85-28.
[65] *Richardson,* 2022 WL 3337772, at *6, citing *Keel,* 986 F.3d at 556 (comparing similar language used in *Stone* and SSR 85-28 and stating, "Though the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error," where the ALJ did not mention *Stone* but did cite to SSR 85-28). *See also Jeansonne v. Saul*, 855 Fed.Appx. 193, 196 (5th Cir. 2021) (citing *Keel* and stating that "SSR 85-28 comports with Fifth Circuit case law and is an acceptable reference for the proper standard for step two").
[66] R. Doc. 12, pp. 9-11 and R. Doc. 16, pp. 2-4.

in analyzing the severity of Plaintiff's impairments, but rather, contends that the ALJ's analysis of the evidence supports the determination that Plaintiff's impairments are not severe.[67]

In *Craig v. Berryhill*, which also involved a plaintiff who was denied benefits at the end of the step 2 analysis, this Court held:

> Despite the seemingly stringent language of the Regulations, in the Fifth Circuit, "[s]evere impairment has a specific – if somewhat surprising – meaning."[68] "'An impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"[69] "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work."[70] "This second step requires the claimant to make a *de minimis* showing."[71] This Court has noted that **"'[b]ecause step two is to be rarely utilized as [a] basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow.'"**[72]

With that holding in mind, it is unclear whether the ALJ applied the correct legal standard in his severity findings. After noting the presence of several medically determinable impairments that could arguably meet Plaintiff's *de minimis* burden, and articulating an acceptable legal standard, the ALJ then seems to evaluate these impairments at step 2 by comparison to listing-level criteria.

---

[67] R. Doc. 15, pp. 5-8.
[68] *Craig v. Berryhill,* No. 17-1715, 2019 WL 1387696, at *7 (M.D. La. Mar. 27, 2019) (remanding disability appeal because the ALJ's step 2 disability determination was not supported by substantial evidence), citing *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).
[69] *Craig*, 2019 WL 1387696, at *7, citing *Salmond,* 892 F.3d at 817 (citing *Loza* 219 F.3d at 391 (quoting *Stone*, 752 F.2d at 1101) (emphasis added by *Salmond* court)).
[70] *Craig*, 2019 WL 1387696, at *7, citing *Salmond*, 892 F.3d at 817 (citing *Loza*, 219 F.3d at 391).
[71] *Craig*, 2019 WL 1387696, at *7, citing *Salmond*, 892 F.3d at 817 (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n. 5 (5th Cir. 1992)) and *Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) ("only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process.") (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint").
[72] R. Doc. 12, pp. 7-8 and *see Craig*, 2019 WL 1387696, at *7, citing *Parker v. Commissioner of the Social Sec.*, No. 12-557, 2014 WL 1239776, at *4 (M.D. La. March 25, 2014) (quoting *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004)) (emphasis added) and citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.") (citing *inter alia*, *Stone*, 752 F.2d at 1101).

11

For example, while the ALJ recognized Plaintiff's diagnosed degenerative disc disease, multiple reports of back pain, at least positive straight leg test, and reduced range of motion, as well as at least one finding of a "markedly" antalgic gait,[73] the ALJ still found that Plaintiff's disc disease and back pain were non-severe in part because there was "no evidence of any lumbar nerve root or spinal cord compromise," and no use of an assistive device, as well as normal range of motion findings, which are criteria considered in Listing 1.15B, C, and D.[74]  It appears that the ALJ at least partially conducted a step 3 analysis at step 2, which is not an application of the correct legal principles. The step 2 analysis is different than the step 3 consideration of whether any of Plaintiff's impairments meets or equal a listing.[75]  Rather, to meet the severity threshold at step two, "the claimant need only ... make a *de minimis* showing that [the] impairment is severe enough to interfere with [his] ability to do work."[76] Furthermore, to the extent that the ALJ found that

---

[73] The 7/25/20 Med Plus C.E. noted both that Plaintiff had an abnormal gait that was markedly antalgic but also that Plaintiff could ambulate effectively.  R. Doc. 11-8, p. 61.  In the DDE on reconsideration, an examiner followed up with Dr. Boudreaux on this issue, who clarified that Plaintiff ambulated without difficulty.  R. Doc. 11-4, p. 20.  However, this discrepancy casts some doubt on the accuracy of the consultative exam, which was the opinion credited by the ALJ in his severity findings.  R. Doc. 11-3, p. 20.

[74] R. Doc. 11-3, pp. 17-20, citing R. Doc. 11-8, pp. 59, 71, 112, 117 and *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.15, disorders of the skeletal spine resulting in compromise of a nerve root, the listing potentially applicable to Plaintiff's degenerative disc disease.  *See id.* at 1.00F (what is considered when evaluating skeletal spine disorders resulting in compromise of a nerve root as incorporated by Listing 1.15B2).  *See also id.* at 1.00C2 (evidence needed to evaluate a musculoskeletal disorder as incorporated by Listing 1.15B).  The Commissioner contends that Plaintiff has not undergone any treatment or taken medicine for his back pain, which supports the decision that the condition was non-severe.  R. Doc. 15, p. 6.  However, Plaintiff's medical records show that Plaintiff reported back pain at several visits, underwent spinal x-rays and inquired about the status of MRIs that had been ordered. Plaintiff's doctor noted that once the MRI was received, Plaintiff would be referred to neurosurgery.  R. Doc. 11-8, pp. 55, 109, 112-14, 116-17, 126, 128-29.  At the least, these records reflect several reports of pain, diagnostic testing, and anticipated treatment by a specialist.

[75] *See Gonzales v. Kijakazi*, No. 20-498, 2021 WL 3783242, at *3 (W.D. Tex. Aug. 25, 2021) ("A step two determination of severity is entirely different than the step three determination of whether an impairment meets a Listing. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ('Even if the degree of impairment is 'severe,' the regulations require an assessment of whether the impairment meets or exceeds the criteria of a [Listing].')."). This is because if a claimant has a medically determinable impairment severe enough to meet listing criteria, he is presumptively disabled, and the sequential analysis ends.  Conversely, a claimant can have a severe impairment that does not meet the listing criteria, in which case the sequential evaluation would continue.

[76] *Richardson,* 2022 WL 3337772, at *5, citing *Anthony v. Sullivan,* 954 F.2d 289, 292, n. 5 (5th Cir. 1992). "Because a determination [of] whether an impairment[ ] is severe requires an assessment of the functionally limiting effects of an impairment[ ], [all] symptom-related limitations and restrictions must be considered at this step. Ultimately, a severity determination may not be "made without regard to the individual's ability to perform substantial gainful

"[Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the evidence," "a finding that the record does not support the degree of limitation alleged by Plaintiff does not equate to the absence of a severe impairment."[77]

The ALJ engaged in similar step 3 findings at step 2 for Plaintiff's other impairments. The ALJ noted Plaintiff's reports of difficulty of breathing, shortness of breath during activity, and use of an inhaler, but found Plaintiff's shortness of breath non-severe in part because Plaintiff's FVC and FEVI scores were normal, which are criteria considered in Listings 3.02 and 3.03.[78] The ALJ noted that Plaintiff's blood pressure readings have been high (and he has difficulty breathing), but found Plaintiff's hypertension non-severe because "an echocardiogram revealed a normal ejection fraction at fifty-five to sixty percent…normal left atrial pressure and diastolic function…mild dilation of the left atrium chamber…and only trace mitral and tricuspid regurgitation," which are some of the criteria considered in Listing 4.01,[79] as well as finding "no evidence of any end stage organ disease, retinopathy, heart failure, coronary artery disease, myocardial infarction, cerebrovascular insult, or hospitalization for hypertensive crisis," some of which are considered in

---

activity." *Richardson,* 2022 WL 3337772, at *5 citing Social Security Ruling (SSR) 96-3P, 1996 WL 374181, at *2 (S.S.A. July 2, 1996) and *Stone,* 752 F.2d at 1104.

[77] R. Doc. 11-3, p. 19 and *Reece v. Saul,* No. 18-2624, 2019 WL 3321718, at *4 (S.D. Tex. July 24, 2019). *See also Bergeron v. Astrue,* No. 08-2851, 2009 WL 3756915, at *4, 8 and n. 8, 9, 11 (S.D. Tex. Nov. 5, 2009) (finding that the ALJ erred in his step 2 severity determination because he required more than a threshold showing, and the plaintiff made a threshold showing of severe impairments of back disorder, heart problems, and hypertension (in addition to other impairments) in light of medical records showing high blood pressure despite medication, several bulging discs with degenerative changes, and decreased range of motion in her neck, a "basically normal" echocardiogram except for "abnormal mitral in flow pattern suggestive of grade 1 LV diastolic dysfunction," and a chest x-ray that showed "cardiomegaly with low lung volumes.").

[78] R. Doc. 11-3, pp. 19-20, citing R. Doc. 11-3, pp. 36-37, 41-43; R. Doc. 11-7, p. 49; R. Doc. 11-8, p. 7, 41, 63 and *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.03, Chronic respiratory disorders due to any cause except CF, and Listing 3.03, Asthma, which are listings potentially applicable to Plaintiff's shortness of breath. Plaintiff's records reflect asthma diagnoses and use of inhalers, *see, e.g.,* R. Doc. 11-8, pp. 7, 12, 15, 17.

[79] R. Doc. 11-3, pp. 19-20, citing R. Doc. 11-8, pp. 3, 41, 61, 63 and *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.01, Chronic heart failure while on a regimen of prescribed treatment. There is no specific listing for hypertension. *See* Listing 4.00D(1)(b)("CHF is considered in these listings as a single category whether due to atherosclerosis (narrowing of the arteries), cardiomyopathy, hypertension, or rheumatic, congenital, or other heart disease.") *See also* Listing 4.00H(1): ("How will we evaluate hypertension? Because hypertension (high blood pressure) generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when we consider its effects under the listings….").

the cardiovascular listings.[80]  By his references to listing-level criteria at step 2, it is unclear whether the ALJ required Plaintiff to establish severity based on a heightened burden, rather than the *de minimis* burden required in this Circuit.[81]

Next, and as pointed out by Plaintiff, the State Agency consultants found that Plaintiff's obesity and hypertension were severe, which is favorable to Plaintiff, but the ALJ did not address those severity findings.[82]  Furthermore, the State Agency consultants found that Plaintiff could perform work at the medium functional level, with exertional limitations as to the basic work activities of lifting/carrying and sitting/standing.[83] While the State Agency determination of Plaintiff's RFC is a finding beyond the purview of step 2, it is notable (although not addressed by the ALJ)[84] because, "[w]here a claimant's impairments limit their ability to perform work at a certain level of exertion, courts have recognized that the *de minimis* burden required at step 2 is

---

[80] R. Doc. 11-3, pp. 19-20 and 20 C.F.R. Part 404, Subpart P, Appendix 1, *see* generally the cardiovascular listings beginning at 4.00.  The ALJ also noted that Plaintiff had no surgical intervention; however, a surgical intervention is not necessarily required to establish severity.  R. Doc. 11-3, pp. 19-20.

[81] *See Holcombe H. v. Kijakazi,* No. 20-2144, 2021 WL 5771934, at *7 (S.D. Tex. Dec. 5, 2021) ("Plaintiff's *de minimis* burden at step two is a low standard that does not equate to substantiating the entirety of his disability claim. *Calderwood v. Colvin*, No. 14-495, 2016 WL 1077956, at *9 (E.D. Tex. Mar. 18, 2016), citing *Stone*, 752 at 1103–04 (5th Cir. 1985) ("Step two's 'severe impairment' analysis is a low burden for the Plaintiff."); *see also Loza*, 219 F.3d at 390 (noting that steps one and two involve "threshold determinations"); *Hermann v. Comm'r of Soc. Sec.*, 317 F.Supp.3d 900, 910 (N.D. Miss. 2018) ("[Step two] functions as a 'pass/fail' system, rather than attempting meaningful evaluation of an impairment in any common-sense meaning of the word 'severe.'").  The ALJ also included a discussion of Plaintiff's RFC in his determination of impairment at step 2: "Moreover, the reported activities and exam findings are not consistent with the representative's assertion that the evidence supports a limitation to the light or sedentary exertional level (19E). Therefore, the overall evidence, as discussed above, supports that the claimant's impairments are non-severe." R. Doc. 11-3, p. 20.

[82] R. Doc. 11-4, pp. 8, 21; R. Doc. 12, p. 10; R. Doc. 16, p. 3.  The Commissioner did not address this issue. *See, e.g.*, *Pena,* 2015 WL 10550964, at *8 ("The foregoing is particularly troubling because the ALJ ended the sequential analysis at Step 2, which requires a fairly *de minimis* showing on the part of the claimant. If favorable evidence is not properly considered and weighed by the ALJ at Step 2, it can result in the premature, improper cessation of the sequential analysis to the prejudicial detriment of the claimant, which is what occurred in this case.").

[83] R. Doc. 11-4, pp. 10, 12, 23, 25.

[84] The ALJ did not specifically address the State Agency exertional limitations on Plaintiff's ability to work.  Rather, he only briefly discredited the State Agency consultants' opinions finding Plaintiff had certain functional limitations, finding those opinions inconsistent with his analysis of the evidence, discussed above. R. Doc. 11-3, p. 20.

14

met."[85] The ALJ also did not provide any analysis of the severity of Plaintiff's obesity, either alone or in combination with his other impairments.[86]

Finally, the cases relied on by the Commissioner are distinguishable.[87] In *Kraemer v. Sullivan*, while the Fifth Circuit noted that the plaintiff's maladies of obstructive pulmonary disease, hypertension, and low back pain were not "inherently disabling under the Act," the ALJ did not stop at step 2 of the analysis in that case, instead proceeding through the RFC determination and finding that the plaintiff was not disabled because he could perform work of medium exertion.[88] Similarly, in *Randall v. Astrue*, while the court did distinguish whether an impairment exists from the severity inquiry, it did so in the context of evaluating a listing determination at step 3 of the sequential analysis, not a finding of no severe impairment at step 2, which is what occurred in this case.[89] Lastly, while the Commissioner correctly cites *Hames v. Heckler* for the proposition that disability is not established "merely because Plaintiff cannot work without some pain or discomfort," the court did so, again, further in the sequential analysis:

> The Secretary did not find that Plaintiff did not have a back problem. Rather he found that the degree of impairment evidenced by the objective medical finding **did not impose functional restrictions of disabling severity on Plaintiff's activities. It should also be**

---

[85] *Parker v. Comm'r of the Soc. Sec.,* No. 12-557, 2014 WL 1239776, at *6 (M.D. La. Mar. 25, 2014), citing *Padilla v. Astrue,* 541 F.Supp.2d 1102, 1107 (C.D. Cal. 2008) ("When, a claimant's impairments limit her to medium work activity, such impairments are by definition 'severe' since they have more than a minimal impact on the claimant's ability to lift, which is a basic work activity."); *Hughes v. Barnhart,* 206 F.Supp.2d 771, 781 (W.D. Va. 2002) (ALJ erred in denying claim at step 2 where claimant had a "physical impairment restricting her to the performance of no more than medium work" and three doctors found her "physical work-related abilities were limited"); *Pickering v. Chater,* 951 F.Supp. 418, 424 (S.D.N.Y. 1996) (claimant's 20 pound lifting restriction "amounts to a step 2 finding that Pickering suffers from a severe physical impairment that significantly limits her ability to perform basic work activities"); *Camacho v. Apfel,* No. 1998 WL 813409, at *7 (E.D.N.Y. July 22, 1998) ("Dr. Graham stated that plaintiff might have problems with lifting due to back pain. Since lifting is itself a basic work activity, a limitation in that regard requires a finding of a severe impairment.") (citation omitted).
[86] As mentioned, the ALJ only noted that Plaintiff is obese. R. Doc. 11-3, p. 18, *but see* Soc. Sec. Ruling, SSR 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity, SSR 19-2P (S.S.A. May 20, 2019), 2019 WL 2374244 (emphasis added) ("We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.").
[87] R. Doc. 15, p. 8.
[88] 885 F.2d 206, 208 (5th Cir. 1989).
[89] 570 F.3d 651, 658-59 (5th Cir. 2009).

15

> **noted that individuals capable of performing even light or sedentary work, despite back trouble, are not disabled under the Act.**[90]

As another court in this Circuit noted, a plaintiff does not have to substantiate the entirety of his disability claim on the low standard applicable at step 2.[91]

### D. Remand is Required Because the ALJ's Error Was Not Harmless

Having determined that it is unclear whether the ALJ applied the correct legal standard at step 2, which is legal error, it must be determined whether the error was harmless.[92] An error at step two of the sequential analysis is generally harmless when the ALJ continues to the next step of the disability analysis.[93] Here, the ALJ says he stopped the sequential analysis at step 2 with the finding that Plaintiff did not have a severe impairment or combination of impairments.[94] Additionally, although the ALJ discusses some information that appears to be consideration of whether any of Plaintiff's impairments meet or exceed a listing, and he also briefly discusses the State Agency consultants' RFC findings that Plaintiff could perform work at a medium exertional level and instead accepts the consultative examiner's findings of no limitations, these were not

---

[90] 707 F.2d 162, 165 (5th Cir. 1983) (emphasis added).
[91] *See Holcombe H.*, 2021 WL 5771934, at *7 ("Plaintiff's de minimis burden at step two is a low standard that does not equate to substantiating the entirety of his disability claim.") (citations omitted).
[92] *Audler,* 501 F.3d at 448, citing *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir. 1988). *See also Audler* at *id*., ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.") (citing *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988).
[93] *Reece*, 2019 WL 3321718, at *5, citing *Herrera*, 406 Fed. Appx. at 903 ("However, this case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work. Therefore, the ALJ's failure to assess the severity of Herrera's anxiety or learning impairments at step two is not a basis for remand."); *Dise v. Colvin*, 630 Fed. Appx. 322, 324 (5th Cir. 2015) ("This case does not present the error found in *Stone* because Dise's request for benefits was not denied based on an improper determination of "non-severity" at step two....In short, 'this case did not turn on whether or not [Dise's depression] impairment was severe,' but on subsequent steps in the analysis— 'an inquiry unaffected by the test set forth in *Stone*.'" (citations omitted)); *Garcia v. Berryhill*, 880 F.3d 700, 705 n. 6 (5th Cir. 2018) ("Any error at step two would likewise be harmless, given that the ALJ concluded at step four, on the basis of substantial evidence, that Garcia retained the ability to perform his past relevant work as a produce broker."); *Dunham v. Berryhill,* No. 17-2641, 2018 WL 6574838, at *5 (S.D. Tex. Nov. 21, 2018) ("Under the sequential analysis framework, error at step two rarely constitutes reversible error, where, as here, the ALJ conducts the remaining steps of the five-step sequential analysis.").
[94] R. Doc. 11-3, p. 17.

16

appropriate considerations at step 2. It is not inconceivable that the ALJ's non-severity determination could have had an impact on the rest of the sequential analysis, to the extent he engaged in that analysis.[95] Therefore, remand is appropriate for reconsideration of the record, with a clear application of the correct legal standard at step 2.[96] As such, Plaintiff's other arguments, including his second assignment of error regarding the Worn Out Worker Rule, are not reached.[97]

V. **RECOMMENDATION**

Because it is unclear whether the ALJ applied the correct legal standard at step 2 of the sequential analysis in reaching his conclusion that Plaintiff does not have a severe impairment, and because that error was not harmless, **IT IS RECOMMENDED** that the Court **VACATE** the final decision of the Acting Commissioner of Social Security and **REMAND** Plaintiff's case to the Commissioner to conduct further proceedings consistent with this Ruling and Order.

Signed in Baton Rouge, Louisiana, on August 10, 2023.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[95] *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

[96] *See e.g., Reece*, 2019 WL 3321718 at *5 (remanding for application of the correct legal standard); *Craig*, 2019 WL 1387696, *9 (remanding because substantial evidence did not support the ALJ's step 2 finding and for a determination of the limiting effects of the plaintiff's impairment); *Johnson*, 2010 WL 148411 at *18 (remanding because substantial evidence did not support the ALJ's non-severity finding and for further development of the record); *Bergeron*, 2009 WL 3756915 at *8 (remanding because substantial evidence did not support the ALJ's step 2 determination and for further development of the record). *See also See Naquin v. Astrue,* No. 07-104, 2008 WL 474206, at *2 (M.D. La. Feb. 14, 2008) (remanding for reconsideration of the plaintiff's mental impairment under the correct legal standard and noting: "Failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis to determine that the correct legal principles have been followed is grounds for reversal.").

[97] R. Doc. 12, pp. 13-16 and R. Doc. 16, pp. 4-5. Similarly, the issue of whether Plaintiff has established that he has a severe impairment is not reached; rather, remand is recommended so that the ALJ can consider the evidence where it is clear that the correct legal principles have been applied. This recommendation is limited to the errors committed at step 2 in the ALJ's decision at issue in this appeal and should not be construed as concluding that the evidence in this case could never support a decision adverse to Plaintiff at any step of the sequential evaluation process on remand.